Good afternoon. Next case on our docket today is People of the State of Illinois v. Jared Robinson, and we have Priscilla Ebdon for the appellant. You may begin Ms. Ebdon. Am I pronouncing your name correctly? Yes. Thank you. Good afternoon. May I please have the floor? Yes, please. This is an interlocutory appeal, the first one I've ever done in my 33 years under 604F Supreme Court rule. It is a case where I believe that this court should definitely rule in favor of the defendant and reverse the trial court's decision not to grant a dismissal of the charges on double jeopardy, but to call for a retrial. I think that my brief has probably explored all of the reasons for that, but I'd like to point out some of the history of this court's rulings against misconduct by defense attorneys, by prosecutors, by even judges, so that you may be reminded that a behavior on the level that this state's attorney resorted to cannot be condoned by any court, and especially not by this court, who has been so concerned with the integrity of the trial proceedings. Did you try the case? I tried the case, yes. I did. I was there. I did all the motions in limine. We had two different sets of motions in limine, two different hearings on those. We had motions to suppress, full day hearing on that. We had all kinds of opportunities for the state's attorney in this case to be reminded that horizontal base nystagmus tests and portable breathalyzer tests are not evidence in any trial. The Supreme Court of this state has made that quite clear. Just before our trial, the Supreme Court said that if you have a fry hearing, perhaps you can have a horizontal base nystagmus test come in. But that was not the case in our trial.  The state's attorney was well aware from the first time we were in court that those two tests would not be admissible. He even long terribly said he would not bring them in. Unfortunately, yes. The source of that in the record is where? The source is not there because we had a continual problem with the court reporter and with the judge not telling the court reporter to take down all the proceedings. The first hearing of the motion in limine, my notes from that hearing say that he has agreed not to do those two tests. The judge in the later motion in limine hearing said I reserve ruling only as to all the tests except horizontal base nystagmus and the PBT. Did the court reporter get that down? Evidently not. However, I think it's quite clear that we were on the same page that those tests were not to be included because with the first witness in this trial, as Mr. Wiseman started asking questions, I thought, where is he headed with these field tests? I want to make sure that he doesn't bring in those two tests in this testimony. I called the sidebar and the subject of that sidebar is the subject of the bystander's report that I had to later submit because I didn't realize having not tried any case in that courtroom that the court reporter who was behind me could not hear what was going on and did not take it down. With regards to your bystander's report, on the last page it indicates approved by the court for submission on appeal. Who provided that language? Did you prepare that language or did the judge? No, the judge did. Now, this rule requires that the judge determine that the bystander's report is accurate. Yes, and the judge certified it for the appeal. But the judge did not at any time say it was accurate. All right. I don't think she would have certified it if she didn't think it was accurate. The only question that she raised on that issue was whether or not the specific detail as to the Supreme Court not allowing those two tests was part of that sidebar. She did not contest the issue of whether or not the subject matter was on those two tests and whether it should be coming in and whether or not the state's attorney had warned his witness not to mention them. In paragraphs two and three of the bystander's report, in the transcript, she specifically points out the last portion of each of those paragraphs as something that appears she does not remember. Now, are we to exclude that from it or to include it in your bystander's report? She made the decision, I believe, that she had to send the bystander's report in because she did not fully remember one way or the other. Do you agree that the trial judge has to determine the bystander's report is accurate? I agree that the trial judge has to say that it is accurate as far as she recalls it. And I think that's what she did. And I think that it was quite clear that the state's attorney, he said, I'm not going to ask questions about those two tests. I know they don't come in. Okay. So he went back. Did he bring up those issues in the direct testimony of the trooper? No. It wasn't there. He was the one controlling the buttons on the videotape from the officer's car. He was sitting there controlling it. All he had to do was push down the mute button for maybe a minute and a half, and that tape would have been edited. We wouldn't have had a problem. But did he do so? Can he have been so stupid that he thought that testimony was only what the officer gave on the stand and not in that video? He had just said, I'm not going to introduce that evidence. Did you view the video prior to trial? Yes. Is there anything in the record to indicate he agreed to edit those portions of it? Other than the bystanders report? Other than the bystanders, okay. No. Okay. And that I blame on, I would say, a rather slipshod procedural pattern in this whole trial process. My client, I don't see how you can say that this is not prosecutorial misconduct that rises to the point of denying my client a fair trial. In your People v. Searlock case in 2008, it was juror misconduct. You defined prosecutorial misconduct as calculated misconduct which is not an inevitable part of a trial and cannot be condoned. Because it signals a breakdown in the integrity of the trial. This was not simple inadvertence. This is an experienced prosecutor who knew exactly what he was doing. He knew he was going to prompt a mistrial with that. He deliberately ignored his promise to the court not to bring it into testimony. He deliberately ignored what he had stated in that sidebar conference. Notice he did not present his own version of that sidebar conference. Because if he had contradicted anything that I put in that, he would have been lying to the court. He had every opportunity to do his own version of the sidebar. I assume you can read the statute that said he could do it. But he didn't do it. And that's because he knew that I was correct. That he had agreed at that time. And if you want some kind of order from the court that that was not supposed to be in there, what about that sidebar? That was a court's order saying do not bring this in. Do you understand, Mr. Prosecutor? It can't be admitted. In People v. Hill, also a 5th District case, there was nondisclosure of evidence and a mistrial and the trial court ordered a retrial. And you stated in that case, the prosecutorial or judicial overreaching needed for a defendant to be able to claim double jeopardy after his own motion for mistrial is more than mere procedural error. It is improper conduct aimed at depriving the defendant of having a fair trial. This was improper conduct. In People v. Cobb, back in 1974, the 5th Appellate affirmed a trial court's dismissal of a case on double jeopardy grounds after a mistrial. That was brought by the defendant because the state had failed to comply with discovery. Over and over again, yes. And you called it gross negligence on the part of the state's attorney and said that was enough to declare double jeopardy and affirm the trial court. This isn't. In this case, this is a whole lot more than gross negligence. In those cases you're citing, the trial court had found it was double jeopardy? Cobb, yes. And we found the trial judge did not abuse her discretion in those cases? That's correct. And in this case, we'll have to find the trial court did abuse her discretion. Right, because for one thing, she didn't, according to the case of... I can't find my reference to it. There is a case here that is People v. Tate. In People v. Bertrand, which is also a 5th District, and the citation in Bertrand was to Arizona v. Washington, the federal case, where this court cited with approval the Arizona v. Washington decision that a right of the defendant to have his trial completed before a particular tribunal should not be frustrated by the direct act of the state. This was a direct act. He didn't push the button to mute. The jury couldn't have determined anything from just what was going on on the screen. All he had to do was mute that button for a minute and a half, and he didn't do it. Excuse me. What are you doing during this minute and a half time? During this minute and a half? At first, I was absolutely stunned that he left the sound on, and then I began to object. I object! The state's attorney didn't turn it off. He said, why are you objecting? What's your objection? That's in the transcript. The judge had to move clear off the platform, which if you've ever seen Crawford County Courtroom, there's a platform that everybody's on. It's like a stage. The judge had to move off behind me onto the floor of the courtroom. When she realized what was going on, she ran up and she said, turn that off. But I couldn't get her attention back over behind other people in time to get that minute and a half turned off. Why didn't the state's attorney push that button the minute I rose out of my chair and objected? At the time you objected, I guess, what had come in? Had the blood alcohol come in and also the results of this? Right. My client's stating the results of the PBT, which as we all know, is not admissible. At that point, the attitude and the smirk on that man's face was just incredible. Now, the trial judge would have been there. We can't see the smirk on his face. You know that. But the trial judge could. She probably couldn't because she was back behind all of us. Well, whatever she saw, she found that what he did was not intentional. Well, you know what she said? She said, I think it's a misunderstanding. Misunderstanding. You're correct. Misunderstanding my foot. How can you misunderstand what you've been told not to do just a few minutes before? It's not like it was months before, days before. It was minutes. Unless you want to find this state's attorney terminally stupid, then you have to believe that he did it deliberately, as I do. He wanted to win this case, and that took precedence. In the People v. Tate case, the Fifth Appellate, this is in 2000, said a prosecutor's intent can be inferred from the objective facts and circumstances of the case. And the only inference that one can take from this state's attorney's actions is that he intended to do it. It wasn't inadvertence. It wasn't misunderstanding, because how can you have a misunderstanding when the defense attorney has just brought it to the court's attention in the middle of the first witness's testimony that this stuff is not to come in? If you think that it's necessary to hold state's attorneys to the same high standards you hold defense attorneys, then I believe that you have to find that the trial court was wrong and that she was mistaken in her ruling of misunderstanding, which is not a factual conclusion. It is her whitewashing of this state's attorney's actions and her excusing him. In People v. Bertram, and I believe that's about two years ago, out of Crawford County, and it was appealed to this court, this court said, unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. And that was where Judge Weber lost his temper with the defense counselor who said, my client is willing to take a lie detector test. And that was the end of it. There was no hearing as to whether there should be a mistrial, nothing. Ms. Hebdon, you'll have the opportunity for rebuttal. Thank you. Thank you. Ms. Stacy? Thank you, Your Honor. Your Honors, counsel, may it please the Court. We began in this case with six issues. Only one issue remains, and that is whether double jeopardy borrows retrial in this case. In cases like this one, where a defendant aborts his jury trial on his own motion, reviewing courts have determined there should be a high threshold by requiring a showing that the prosecutor intended to provoke the mistrial in order to borrow a retrial of the defendant. This bar is intentionally set to be an onerous burden on the defendant. And with all due respect to counsel, who cited a case regarding prosecutorial overreaching, in 1982 in Morgan v. Kennedy, it's a U.S. Supreme Court case. There, the Supreme Court held that any form of jeopardy analysis based solely upon prosecutorial overreaching unaccompanied by an intent on the part of the prosecutor to provoke the defendant into moving for a mistrial must be rejected. The Supreme Court of Illinois adopted that decision in Morgan v. Kennedy, declaring that there must be proof that the prosecutor actually intended to provoke the defendant into seeking a mistrial. That's in People v. Nelson. In that case, the court indicated lesser standards, such as focusing on whether the prosecutor's conduct was done in bad faith or was intended to harass the defendant or reject it. When the defendant's arguments in this appeal are examined, it's clear that he has failed to meet his burden, and in this case, the circuit court judge did not abuse her discretion in denying the defendant's motion to dismiss the charges. Abuse of discretion is the most deferential standard of review, next to no review at all. An abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. That could hardly be said of Judge Harrell in this case. In her reply brief, the defense counsel claims that the appellate prosecutor has, quote, deliberately ignored the plain statements of the trial judge concerning the defendant's bystander's report. Counsel argues in her reply brief that this court should not take the appellate prosecutor's misconstruction of the trial judge's statements as correct. While I agree that this court should not just take my word for it as to what the trial court said, the record fully refutes the defendant's claim that I have misconstrued the trial judge's statements. So let's examine the statements a little bit further, because when it comes down to it, when you examine the defendant's bystander's report, you must also examine the transcript of the hearing on the proposed report to expose the flagrant errors that the defendant claims to be fact. Claim one is that the trial court judge agreed with the contents of the defendant's bystander's report. This is fully refuted by the record. The transcript at page 825, and this is the trial court judge speaking. I have read, I believe, all the transcripts, and I've read the record sheets, and nowhere in there do I find that there has been an actual court order regarding the PBT. And as a matter of fact, we had a telephone conference. I was at Olney, you were at Charleston, and he was in Robinson on August 7th, and I went home and typed all my notes. This is directly from the hearing before Judge Harrell on the motion for approval of the bystander's report to go to the site of our defendant's hearing. At page 828 to 829 in the record, the court said, I am not going to sign the approved bystander's report because I don't recall everything exactly the way you said it, but if you want to submit it, you don't have to have my approval. At page 833, defense counsel said, this is with regard to her conclusion now that the prosecutor was supposed to somehow edit that videotape, that he was supposed to have edited that tape, then I'll be glad to add that in. Judge Harrell responded, and this continues on to page 834, no, that is not my recollection about what happened in this sidebar. At page 836 to 837, Judge Harrell said, well, like I said earlier, I remember being in that sidebar and what went on. I don't remember specifically it being said which were inadmissible in court and had been excluded from the trial by the court with the agreement of the state's attorney. This is concerning the issue on the portable breath test and the horizontal gaze and stagness test. I don't remember that, and I don't remember in paragraph number three the sentence that says, as those tests could not be used against the defendant at trial, the state's attorney further stated he realized the court had ordered he could not use those tests. Defense counsel replied, but that's what he said. The court responded, I don't. The reason why I don't remember it being that way is because there is no court order that I have signed and nothing in the record sheet as far as the notes that I took on your motions in limine. Further down on that same page, 837 of the record, the court said, I know what is in this court file, and I know there is no order that I have specifically signed by Judge Harrell that the PBT could not be used. I don't remember ever signing anything like that, and like I said, I invite you, I invite you to show me where in the record sheet, the transcripts, or a court order that I've signed it. I welcome that. And while counsel here today argues that the HGN, where the arresting officer showed the flashlight on his eyes conducting the HGN at the time of the hearing or mistrial, this is what counsel said. I spoke to State's Attorney Wiseman about the nystagmus test because that is not something that is so obvious that it's being done. That is the only thing that I said in the meeting at it because there is nothing that says what the result was. There's nothing that backs it up. It just looks like a flashlight. Aren't you asking us to determine if the bystander's report is accurate or not? Isn't that the trial judge's determination? I think in this context, the bystander's report has to be looked at in context with the transcript of the hearing on the bystander's report. But that isn't the role of the appellate court, is it? Well, it is in this case because the trial court judge said because of my recollection, my notes, there's no court order excluding the PBT or the HGN, I'm sending up this transcript so that the appellate court can take it. But the Supreme Court rule says that, and the language is not on this bystander's report, that she found it to be accurate. That's correct. She just shipped it to us, and she and you want us to determine what's accurate. I think the plain language in the transcript itself determines that the judge felt this was not an accurate report. And I would dispute that it was the trial court judge who drafted that order. I believe it was not. No, I think it's clear that counsel drafted the order, but the language right above the judge's name, it was unclear to me who did that. Just the one line above the judge's name. But I believe in this case you do not. What you have here is a self-serving and one-sided bystander's report that was never indicated by the trial court that it was accurate. But doesn't the ‑‑ I'm reading C right now, and it says the court holding hearings, if necessary, shall promptly settle, certify an order, filed an accurate report of proceedings, absent stipulation, only the report of proceedings so certified shall be included in the record on appeal. Isn't that part of the hearing, to settle what the truth is, and then the judge sends us what either you've agreed is the truth or what she certifies is the truth? I think that's the contemplation by the Supreme Court rule, that there will be some sort of a hearing where somebody can determine, this is what was said at the Sci Bar conference, or because there's no ‑‑ But it's not just a ‑‑ I mean, if it's a contemplation, it's a required contemplation. It's a shall. It is a contemplation, but it's also a requirement that that report be accurate. In this case, we do not have a certification that that report is accurate. And so the best the trial court judge did in this case was, I'm going to send up the transcript of the hearing. But I don't think she's supposed to do that. Is she supposed to certify the accuracy and decide the accuracy? I think it's readily apparent from the transcript of the hearing that that bystander's report is fully refuted by the trial court's order. There was no order ever saying you can't bring in a PBT or the HGM. That was never part of the trial court's order. So you're saying that's what's certified, is that that never happened? The trial court specifically said repeatedly, I never signed an order. You fill out the file, review it. You show me where I signed an order that the PBT and the HGM couldn't come in. There is no such order that says that. What we have is the defense attorney saying, well, you know, I thought we had an agreement that that wasn't going to come in. That is also fully refuted by the record. The defense attorney claims the state's attorney knew better than to show the videotape because counsel brought it up at every opportunity. Again, it's fully refuted by Judge Harrell's comment on page 837. There's no court order that I've signed and nothing in the record sheet as far as the notes that I took on your motions and limiting. Counsel was invited to show the court where that was in the record, wasn't able to do that. And defense counsel's claims about any alleged agreement concerning the videotape are, again, absolutely and positively refuted by the record. At that same hearing, the state's attorney indicated he understood the videotape from the scene would be played for the jury. That's where this whole PBT comes in, is only in the playing of this videotape for the jury. There was no testimony elicited and counsel even conceded that here today. No testimony was elicited concerning that portable breath test. In response, defense counsel stated at page 832, there was no discussion as to that particular tape at all, at any time. I don't know what he is talking about. The only consultation we had about any kind of tape was the ones at the jail, not at the scene. The record is clear and unmistakable that defense counsel fully intended for the jury to see that videotape from the scene. In her opening statement, transcribed at page 615 to 616 of the record, she said, A video taken by Trooper Morris as he traveled to the scene will be shown to you. He arrived after 3 o'clock in the morning because he had to be called in from a distance. And that video, if you look carefully, will show you just how hard it is to distinguish vehicles in the road in the dark in Illinois, on a very narrow, unlighted country road. That video will show that my client was dazed, that he was in shock and probably in suffering from injuries sustained in that accident, including a concussion caused by striking his head at the time of impact of the vehicles and losing consciousness. And yet, he was cooperative, polite, not having any difficulty walking. He did not show, to my mind, any obvious signs of intoxication. You will hear how few items that Trooper Morris checked off on his check sheet as being signs of intoxication. The record shows that the playing of the videotape of the scene or the jury was far from any sort of an ambush. This was contemplated by both parties. It was also clear that defense counsel knew exactly what was on that videotape. He simply could not proceed at trial in one way and then claim on appeal it was error to do so. So are you saying it was appropriate for him to leave that in? I'm saying that it could have been resolved and should have been resolved prior to trial. Are you saying it was appropriate for him to leave that in? I believe that that would be up to defense counsel to file an appropriate motion in limine and to get a hearing on that on the record. My own opinion is that could possibly come in as an admission of a party opponent. That issue has not fully been explored on the record because we don't have any details of what the discussion was about whether or not PBT should come in. We do know that the state's attorney said, other than what's on that videotape, I'm not going to ask any questions about that. In addition to admitting that there were no discussions about editing the videotape, counsel admitted that off-the-record discussions were not even relevant to this appeal. At a hearing on defendant's bystander's report, counsel said at page 826, I mean it's not relevant to the appellate court as to off-the-record talks between the state's attorney and defense counsel. In this case, the defendant and his counsel elected to abort trial by the very jury they helped to seat. Counsel now claims there's no connection between the defendant's use of the videotape in her opening statement and whether jeopardy has attached. This is a severe miscalculation because whether the prosecutor lying away and working with the videotape of the crutch scene is bringing on the defendant to go with him into rooting for a mistrial is at the heart of this appeal. Here there was no order barring the use of the videotape. And even, let's assume there was even an order that said you cannot use that videotape because the defendant says out loud what's on that horrible breath test. Let's say that that's what the record shows. When we know here today that's completely inconsistent with the record. The case law is clear. Even if there were motion in limine granted and an order in limine entered by the court, courts generally view the violation of an order in limine as prosecutorial inadvertence. I cited in my brief case of People v. Gustafson that involved a prosecutor who twice in the same hearing violated an order in limine concerning an HGM test. He questioned the witness about it not once. He was warned by the trial court judge, but then he did it again. The trial court granted the defendant's motion for a mistrial but denied the motion to dismiss. The appellate court agreed, finding that the prosecutor's action was inadvertence. Again, the case law on what the defendant must show to bar a retrial is very clear. A defendant's motion for a mistrial is deemed to be a deliberate election on his part to forego his value right to have his guilt or innocence determined before the first trial of fact. Double jeopardy is not implicated when, as here, the defendant himself seeks to have the trial terminated without submission of the issue of guilt or innocence to the trier of fact. Further, the defendant cannot by his own act avoid the jeopardy on which he stands and then assert it as a bar to subsequent jeopardy. In this case, the trial court's order denying the defendant's motion to dismiss was in no way a use of discretion, and the people respectfully request this court affirm the decision of the circuit court and remand this clause for trial. Thank you. Thank you, Ms. Stacy. Ms. Abdan, you have rebuttal. Yes. Could you address the portion of this Kennedy case where the prosecutor's actual intent was to goad the defendant into moving for a mistrial? The court failed to find that. Why do you think that was an abuse of discretion? I think it was an abuse of discretion because the court realized that the issue had been raised immediately before and assurances had been made that though that evidence would not come in. I tried every which way to keep that evidence out. Why did the state want to force you into asking for a mistrial in the beginning of opening statement? Because, what do you mean in opening statement? After the first witness. First witness? Yeah, why did they want a mistrial with the first witness? Well, I think that he probably heard during the recess before we played that video that we had a number of people on that jury that were not going to convict my client. Okay. That was in your brief, but that's another problem with no citation to the record. Where do we go to draw that conclusion you just made by looking in the record? Well, there's two conclusions you can draw. I agree. One is that the state's attorney was absolutely stupid, or you can say he deliberately did it, and the only reason he would do it is to goad me into a mistrial. The part about the jurors being in your favor halfway through the first witness, where in the record do we go to find support for that? You don't, and that's the problem with part of this whole situation, I agree, is that things that should have been in the record somehow aren't. And you're saying that that would have been in the record how? If there had been an accurate transcript. If there had been any exploration of the prosecutor's intent during the motion for mistrial, which the judge did not do, and, in fact, if you read that, the state's attorney didn't even really tell the judge why he did it. There is no exploration of intent whatsoever. But in your cases you've said that you can infer from the behavior. What other intent could he have had to bring that in when he deliberately left it out when he was questioning that witness? Surely he didn't think that I was going to sit there and listen to it and go, Oh, that's fine. When it has my client saying that the PBT was a .17, when the whole theory of the case that we had developed over the time was that the breathalyzer was taken three hours later and to do aggravated driving under the influence, you have to say that at the time of the accident it was .08 or over. Is it in the record what the breathalyzer figure was? It's in the video. No, that's the PBT, right, the portable breathalyzer? No, it's not in the record because we didn't get that far. That's what came out of it. Well, you have it in the motion to suppress hearing that it was .17 three hours later. So it's .17 three hours later and the PBT that he said was a .17. So what conclusions is a jury going to make? Especially if they don't know a PBT is not accurate. And this thing about my using the fact that there was a videotape, yes, I knew there was going to be a videotape, and one thing that it showed was that you couldn't see beyond your headlights  because the state trooper taped his entire journey. I mean, you might see a sign flash at the last second, but what I did in my opening statement was say watch that videotape for the fact that you can't see on a dark Illinois road at night when you come up over a hill to an accident or to a scene where somebody is parked in the road. Thank you both for your arguments and briefs, and we'll take the matter under advisement.